**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0614n.06

No. 15-5090

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 31, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| RICKY VOUGHN HUNDLEY, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **OPINION** |
| | ) | |

**Before: GUY, MOORE, and KETHLEDGE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** In 2005, Ricky Hundley pleaded guilty to attempted bank robbery, possession of a firearm during and in relation to a crime of violence, possession of an unregistered short barreled shotgun, and possession of a firearm by a convicted felon. He was sentenced to 147 months of imprisonment and five years of supervised release. Shortly after he began his term of supervised release, the U.S. Probation Office requested that he undergo sex offender treatment, a request that Hundley opposed. At a hearing before the district court, the government decided to modify its request, asking that Hundley undertake a sex-offender assessment, rather than treatment. The district court granted this request. After reviewing our decisions in *United States v. Carter*, 463 F.3d 526 (6th Cir. 2006), and *United States v. Thomas*, 212 F. App'x 483 (6th Cir. 2007), we hold that the district court abused its

discretion in arriving at this conclusion. Accordingly, we **REVERSE** the district court's judgment and **VACATE** the special condition imposed upon Hundley.

## I. BACKGROUND

On December 8, 2004, a federal grand jury returned an indictment against Hundley, charging him with attempted bank robbery, possession of a firearm during and in relation to a crime of violence, possession of an unregistered short barreled shotgun, and being a felon in possession of a firearm. R. 14 (Indictment at 1–3) (Page ID #25–27). Hundley's indictment listed two predicate offenses for his felon-in-possession charge: a 1978 conviction for "knowingly receiving stolen property over $100" in violation of Kentucky law, and a 1992 conviction for "aggravated criminal sexual abuse" in violation of Illinois law. *Id.* at 3 (Page ID #27).

Hundley pleaded guilty to these charges pursuant to a plea agreement, *see* R. 29 (Rep. & Rec. at 1) (Page ID #66), and was sentenced to 147 months of imprisonment and five years of supervised release, *see* R. 34 (Judgment at 3–4) (Page ID #81–82). As part of Hundley's supervised release, the district court imposed several standard conditions of supervision, and a number of additional conditions, such as requiring Hundley to participate in a drug treatment program. *See, e.g.*, *id.* at 4–5 (Page ID #82–83). None of these conditions dealt with or referred to Hundley's prior conviction for sexual abuse.

Shortly after Hundley began supervised release, the U.S. Probation Office asked if (1) he would agree to pay for and submit to "Polygraph, Computer Voice Stress Analysis, or other similar device to obtain information necessary for [his] supervision, case monitoring, and

treatment," (2) if he would "participate in a sex offender counseling program approved by the U.S. Probation Office," and (3) if he would agree to "have no contact with the victim" of his sexual abuse offense. R. 47 (Pet. at 1) (Page ID #106). Hundley refused to accede to these conditions, prompting a hearing before the district court.

At this hearing, the government notified the district court that it was no longer seeking treatment for Hundley, but only a "sex offender assessment." R. 56 (Hr'g Tr. at 2) (Page ID #146). When asked by the court what this assessment would involve, the government stated it was "not 100 percent sure, honestly." *Id.* at 6 (Page ID #150); *see also id.* ("At this time, [neither] the United States nor probation is fully clear exactly what that assessment would entail."). In response, the court indicated that it "would prefer to go ahead and adjourn this hearing and reconvene it once [more] information's available," a sentiment to which the government initially concurred. *Id.* at 7 (Page ID #151). Yet, before the district court could act further, the government reported that it "was just informed that the assessment would likely take about two hours and would cost approximately $100, and it would entail questioning." *Id.* at 8 (Page ID #152). After learning this information, the court decided to impose the assessment, describing it as a "baby step," *id.* at 11 (Page ID #155), and noting that it "would hate not to have a two-hour assessment conducted and then have some kind of tragedy befall on our community," *id.* at 12 (Page ID #156). In a subsequent order, the district court found "that the requested condition reasonably relates to the history and characteristics of the defendant as required in 18 U.S.C. 3553(a)(1) and involves no greater deprivation of liberty or property than is reasonable to obtain a determination as to whether the defendant is in need of sex offender treatment and/or

additional conditions." R. 52 (Dist. Ct. Order at 1) (Page ID #132). Hundley has timely

appealed, and the district court's order was stayed pending the disposition of this appeal. R. 59

(Dist. Ct. Order at 1) (Page ID #171).

## II. DISCUSSION

### A. Standard of Review

We review for abuse of discretion the district court's decision to impose a supervised-

release condition. *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2007). "An abuse of

discretion occurs when we are left with the 'definite and firm conviction that the [district] court

. . . committed a clear error of judgment in the conclusion it reached upon a weighing of the

relevant factors' or 'where it improperly applies the law or uses an erroneous legal standard.'"

*United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (quoting *Huey v. Stine*, 230 F.3d

226, 228 (6th Cir. 2000)).

### B. Analysis

We review the imposition of a special condition of supervised release along two

dimensions: procedural and substantive. *Carter*, 463 F.3d at 528–29. As we stated in *Carter*,

from a procedural perspective, the district court must "state in open court the reasons for its

imposition of the particular sentence, including its rationale for mandating special conditions of

supervised release." *Id.* (internal quotation marks omitted). We believe that the district court did

so here, and, in any event, Hundley has not raised a procedural challenge.

Hundley instead challenges the district court's decision from a substantive perspective.

On a substantive level, "[a] sentencing court may impose a non-mandatory condition of

4

supervised release only if it meets three requirements." *Id.* at 529 (footnote omitted). Those requirements are laid out in 18 U.S.C. § 3583(d). First, the condition must be "reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)."[1] 18 U.S.C. § 3583(d)(1). Second, the condition must involve "no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C.] section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d)(2). And third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)." 18 U.S.C. § 3583(d)(3). A condition "must satisfy all three requirements." *Carter*, 463 F.3d at 529.

The district court abused its discretion in requiring that Hundley undergo a sex-offender assessment. As we held in our decisions in *Carter* and *Thomas*, this condition does not reasonably relate to the various sentencing factors outlined in 18 U.S.C. § 3583(d)(1). First, with

---

[1] 18 U.S.C. § 3553(a)(1) and 18 U.S.C. § 3553(a)(2) read as follows:

**(a) Factors to be considered in imposing a sentence**.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
    **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
    **(2)** the need for the sentence imposed—
        **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        **(B)** to afford adequate deterrence to criminal conduct;
        **(C)** to protect the public from further crimes of the defendant; and
        **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

respect to the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), it is clear that the charges to which Hundley pleaded guilty—attempted bank robbery, felon in possession of a firearm, possession of an unregistered short barreled shotgun, and possession of a firearm during and in relation to a crime of violence—have "nothing to do with sex." *Carter*, 463 F.3d at 530; *see also United States v. Scott*, 270 F.3d 632, 636 (8th Cir. 2001) (holding that sex-offender conditions "bear no reasonable relationship" to armed bank robbery).

Second, the condition is not reasonably related to Hundley's "history and characteristics." 18 U.S.C. § 3553(a)(1). The facts here are nearly identical to those in *Carter* and in *Thomas*: *Carter* involved a sex offense committed in 1988, seventeen years before the imposition of the sex-offender treatment condition, 463 F.3d at 532, and *Thomas* involved a sex offense committed in 1986, nineteen years before the imposition of the sex-offender assessment condition, 212 F. App'x at 484–85. In *Carter*, we reviewed decisions from our sister circuits, before stating that "[w]e need not . . . decide precisely how much time must elapse before a sex offense becomes too remote in time to be reasonably related to a sex-offender condition, as the instant gap"— seventeen years—"fits comfortably within the cases." 463 F.3d at 532. This reasoning governs the instant case. The time difference here is in fact even more attenuated: Hundley committed his sex offense in 1992, and the district court imposed the sex-offender condition in 2015—a more than twenty-year gap.

Finally, we address whether the imposed condition "afford[s] adequate deterrence to criminal conduct," 18 U.S.C. § 3353(a)(2)(B), whether the condition "protect[s] the public from further crimes of the defendant," 18 U.S.C. § 3353(a)(2)(C), and whether the condition

"provide[s] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3353(a)(2)(D).

We do not believe that the sex-offender assessment will deter future criminal conduct. In *Carter*, we quoted approvingly from the Eighth Circuit's decision in *Scott*. *See* 463 F.3d at 531 ("The government presented no evidence that [the defendant] has a propensity to commit any future sexual offenses, or that [he] has repeated this behavior in any way since his 1986 conviction. Therefore, the special conditions seem unlikely to serve the goals of deterrence or public safety, since the behavior on which the special conditions are based, though highly reprehensible, has ceased." (quoting *Scott*, 270 F.3d at 636)). This reasoning guides our analysis in this case. Hundley "is not required by Illinois law, Kentucky law or federal law to register as a sex offender." R. 56 (Hr'g Tr. at 4) (Page ID #148). There have been no allegations of other sex-related criminal offenses committed by Hundley. *Id.* at 13 (Page ID #157). Thus, as in *Scott*, "the behavior on which the special conditions are based, though highly reprehensible, has ceased." 270 F.3d at 636; *see also United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) ("Supervised release conditions predicated upon twenty-year-old incidents, without more, do not promote the goals of public protection and deterrence.").

We employ this same analysis in deciding whether the condition "protect[s] the public from further crimes of the defendant," 18 U.S.C. § 3353(a)(2)(C), and whether the condition "provide[s] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3353(a)(2)(D). As we have outlined, the remote nature of a sex-related offense cannot, standing alone, justify a district

7

court's decision to impose a sex-offender condition because of a supposed danger to the public. Moreover, there is insufficient justification for Hundley to receive treatment or training, given the attenuated nature of his conduct.

The government concedes that the district court abused its discretion in this case. *See* Appellee Br. at 13 ("In summary, the record does not support the grounds the district court cited to impose the sex-offender assessment on Hundley."). It nonetheless requests that we remand this case for further proceedings, so that the record may be "supplemented with information to explain the sex-offender assessment process" in order to "assess what deprivation of Hundley's liberty might result." *Id.* In making this argument, the government relies in part on our decision to remand in *Carter*. *Id.* at 14.

We reject the government's contentions, for several reasons. First, the government's argument appears to be directed towards the second requirement in 18 U.S.C. § 3583(d)—i.e., that the condition imposed involve "no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C.] section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." But we have already noted that any imposed condition must comply with all three requirements of § 3583. *Carter*, 463 F.3d at 529. And we have held that the condition at issue does not comply with § 3583(d)(1)—that the condition be "reasonably related" to a set of various sentencing factors. That means that we need not delve into the "deprivation of liberty" factor.

Second, a remand would essentially excuse the government for its remarkable lack of preparedness. The government had multiple opportunities to describe the nature of the program at issue. It could have done so at Hundley's sentencing—it did not. It could have done so in its

8

initial discussions with Hundley—it did not. Most inexcusably, it could have done so at the hearing that the district court convened for the express purpose of determining whether the sex-offender assessment was appropriate—it did not.

Third, the government's reliance on *Carter* is inapt. In *Carter*, we vacated the special condition after determining that the district court abused its discretion by imposing this condition based on Carter's 1988 sex offense. 463 F.3d at 533. We then remanded the case to the district court "to determine whether the nature and circumstances of [Carter's] 2004 stalking offense"—an offense that the district court did not consider on the first pass—"justify *reimposition* of the special condition." *Id* (emphasis added). In other words, on a set of nearly identical facts, we vacated the special condition in *Carter*, deciding to remand only in light of an offense that the district court had not considered (and which does not apply here). We made this point clear in *Thomas*, where we stated that "[t]here is one fact in *Carter* not present here"—Carter's stalking conviction. 212 F. App'x at 487 n.1; *see also id.* ("The panel therefore remanded the matter [in *Carter*] to the district court to determine if the 2004 conviction would justify the imposition of sex-offender treatment.").

*Thomas*, in fact, provides a clear path for our decision in this case. The government moved for a sex-offender assessment in *Thomas* on the basis of a single sex-offense conviction, committed almost two decades prior. *Id.* at 484–85. Relying on *Carter*, we reversed the decision of the district court and vacated the special condition—without remanding for additional fact-finding. We do the same here. After reviewing the relevant facts and circumstances, we hold that the district court abused its discretion in imposing a sex-offender assessment against

Hundley on the basis of a single offense committed by Hundley in 1992. This condition does not reasonably relate to the various sentencing factors referenced in 18 U.S.C. § 3583(d)(1), making it unnecessary to assess whether the condition satisfies § 3583(d)(2) or § 3583(d)(3). We vacate the sex-offender assessment condition on Hundley's supervised release.

### III. CONCLUSION

For the reasons stated above, we **REVERSE** the district court's judgment and **VACATE** the special condition imposed upon Hundley.